UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL SANG HAN,<br><br>Defendant. | Criminal Action No. 15-142 (JEB) |

**MEMORANDUM OPINION**

Defendant Michael Han allegedly promised investors that his company Envion would usher in a black gold rush by turning plastic back into oil. According to the Government, although that concept never materialized, it did not stop Han from stringing along his financers, ultimately defrauding them out of nearly $40 million. With trial a couple of months away, Defendant now brings several Motions challenging the validity of the Indictment. Specifically, he asks the Court to: (1) require the Government to provide a bill of particulars; (2) dismiss Counts 10 and 11 as lacking venue; (3) dismiss Count 12 for first-degree fraud as duplicative of the wire-fraud charges (Counts 1 and 2); and (4) dismiss Count 3 for securities fraud as failing to state an offense. Finding no merit in any of these positions, the Court will deny all of the Motions.

**I.     Background**

On September 14, 2017, a grand jury returned a 12-count superseding Indictment against Defendant. In considering Han's Motions at this stage, the Court takes the facts as alleged in the Indictment as true. See United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015). A very brief synopsis follows here, while facts pertinent to particular Motions are set forth in the corresponding Analysis sections below.

1

Beginning in early 2004 and continuing until at least November 2011, Han was Chairman, Chief Executive Officer, and President of science and technology companies Envion Inc. and Envion Industries, LLC. See Indictment, ¶ 1. During this time, Defendant resided in, and Envion operated out of, the District of Columbia, Virginia, and Florida. Id., ¶¶ 1, 2. Claiming that Envion owned a U.S. patent for a machine that could turn plastic into oil — the "EZ Oil Generator" — Han solicited investments for the company. Id., ¶ 2. Two investors ponied up nearly $40 million to support Envion's mission and growth. Id., ¶ 14. Particularly relevant here is an October 2010 investment of $20 million from Defendant's main backer. Id., ¶ 39. After they agreed on the terms, Han instructed a bank to send the $20 million to his personal bank account. Id., ¶ 40. Approximately two months later, Defendant emailed the investor a promissory note for that sum. Id., ¶ 42.

Despite the nearly $40 million in total investments, Envion never actually owned the claimed patent nor had the capability to create or deliver oil generators. Id., ¶ 12. Instead, Han diverted the money for his personal benefit, including purchasing two multi-million-dollar pieces of real estate, using millions to pay off credit-card balances, and withdrawing hundreds of thousands of dollars in cash. Id., ¶¶ 29-30, 38, 41.

Based on this scheme, the Government charged Han with two counts of wire fraud, 18 U.S.C. § 1343; one count of securities fraud, 15 U.S.C. §§ 78j(b), 78ff; six counts of engaging in unlawful monetary transactions, 18 U.S.C. § 1957; two counts of tax evasion, 26 U.S.C. § 7201; and one count of first-degree fraud, D.C. Code § 22-3221(a). A trial is set to take place in February 2018.

## II. Legal Standard

Under Federal Rule of Criminal Procedure 12, a defendant may, before trial, allege that an indictment is facially defective on the basis of duplicity, multiplicity, "lack of specificity, improper joinder, [or] failure to state an offense." In reviewing such a motion, the court is "limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." United States v. Sunia, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quoting Untied States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006)) (emphasis in original); see United States v. Hitt, 249 F.3d 1010, 1015 (D.C. Cir. 2001). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). The court presumes the allegations in the indictment are true and "may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012) (citation omitted).

## III. Analysis

Han argues in his multiple Motions that the Indictment here is flawed for four reasons: (1) it does not contain sufficient detail to allow him to mount a defense; (2) D.C. is not the proper venue for the tax-evasion charges; (3) first-degree fraud under the D.C. Code is duplicative of the federal wire-fraud counts; and (4) Count 3 does not state an offense because

the promissory notes were not "securities" under the Exchange Act. The Court considers each in turn.

   A.  Bill of Particulars

The Court can swiftly dispose of Defendant's Motion for a Bill of Particulars. See ECF No. 39. While an indictment need only allege "the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), a defendant may request additional information through a bill of particulars "to ensure that the charges brought against [him] are stated with enough precision to allow [him] to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." United States v. Butler, 822 F.2d 1191, 1193 (D.C. Cir. 1987). Unlike a Rule 12 motion, the court may look beyond the indictment to determine, in its discretion, whether to direct the Government to file a bill of particulars. See id.; Fed. R. Crim. P. 7(f). "[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars" is generally not justified. Butler, 822 F.2d at 1193. A defendant may not use a bill of particulars as a "discovery tool or a devise [*sic*] for allowing the defense to preview the government's theories or evidence." United States v. Ramirez, 54 F. Supp. 2d 25, 29 (D.D.C. 1999).

Defendant here does not contend that the Indictment fails to set out the required elements of each offense, but instead asserts that the Government should "identify with particularity the conduct underlying the aforementioned charges." Mot. at 8. Han asks for the "basis" for the fraud allegations, details of his allegedly false statements, the "precise representations that are the basis of the securities fraud charge," and "the amount of corporate and personal income tax allegedly due and owed by" him. Id. at 7-10. The Government counters that the parties have engaged in protracted and substantial discovery, which included the production of all of the

4

information that Defendant now seeks.  See ECF No. 52 (Opposition) at 7.  Han also participated in two separate reverse-proffer sessions, during which "the Government discussed its case in detail and provided Defendant with a set of exemplar documents illustrating" the fraud.  Id. at 9.

The Court gleans from the Government's Opposition (to which Defendant did not file a Reply) that all of the requested information has been provided to him either in discovery, the Statement of Offense, or in the Opposition itself.  A bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case.  See Butler, 822 F.2d at 1193-94 (affirming district court's denial of request for bill of particulars asking government to state approximate times and places defendant participated in alleged conspiracy).  Defendant's Motion for a Bill of Particulars will thus be denied.

B.  Venue (Counts 10 and 11)

Han next moves to dismiss the tax-evasion counts (10 and 11) on the ground that venue is not proper in the District.  See ECF No. 45.  The Government has a choice of forum in which to prosecute but still ultimately bears the burden of establishing proper venue by a preponderance of the evidence.  See United States v. Lam Kwong-Wah, 924 F.2d 298, 301 (D.C. Cir. 1991).  The Court views such evidence in the light most favorable to the Government when determining whether it has done so.  Id.

The Indictment charges Han with violations of 26 U.S.C. § 7201, the prosecution of which requires a willful "affirmative act constituting an evasion or attempted evasion of" a tax deficiency.  Sansone v. United States, 380 U.S. 343, 351 (1965).  Tax evasion is a continuing offense, meaning that it may be prosecuted in any jurisdiction "through which a process of wrongdoing moves."  United States v. Johnson, 323 U.S. 273, 276 (1944); see also 18 U.S.C.

5

§ 3237(a) (allowing for "any offense against the United States [that is] begun in one district and completed in another, or committed in more than one district" to be "prosecuted in any district in which such offense was begun, continued, or completed"). The offense is not completed until the person's tax return is filed, signed, and mailed, but it begins whenever the defendant makes a "willful attempt to defeat and evade" tax liability. Spies v. United States, 317 U.S. 492, 499 (1943). Venue is thus proper in any district where the defendant "beg[a]n, continued, or completed" an affirmative act with a "tax evasion motive." United States v. Strawberry, 892 F. Supp. 519, 521 (S.D.N.Y. 1995).

Here, Han argues that § 7201 requires that he commit an act while actually present in the District, which he believes the Government has not sufficiently alleged. Defendant is correct that the Indictment does not state that Han committed any act with a tax-evasion motive while in D.C. Instead, it alleges that he (1) "cause[d]" a fax to be transmitted "from the District directing the transfer of $20 million to" his personal bank account, see Indictment, ¶ 46, and (2) provided false information to Envion bookkeepers who were located in D.C., which resulted in the creation of false business records. Id., ¶¶ 52, 54. Han acknowledges that the Indictment contains information that he interacted with individuals within the District but contends that he "cannot be subject to venue in the District of Columbia due to the alleged acts of a third party." ECF No. 57 (Reply) at 4; see Mot. at 2 (noting that Indictment "claims that [he] concealed information from, or misled, unnamed Envion employees who were allegedly located in the District of Columbia for some period of time").

To determine proper venue absent a statutory directive, "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279

6

(1999). As to the conduct, the Supreme Court in Spies noted that since "Congress did not define or limit the methods by which a willful attempt to defeat and evade [taxes] might be accomplished," it would not do so either. See 317 U.S. at 499. Instead, the Court gave an illustrative list of acts from which "affirmative willful attempt may be inferred[,]. . . such as keeping a double set of books, making false entries of alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." Id. (emphasis added). The essential conduct, therefore, is any affirmative act with a "tax-evasion motive." Spies, 317 U.S. at 499..

According to Han, however, the Government comes up short on the second part of the venue inquiry — *viz.*, the location of the crime. He argues that tax evasion requires that the defendant himself commit such an act in the jurisdiction of venue. Venue doctrine, however, is not so circumscribed.

The Supreme Court has long recognized that "there may be a constructive presence in a state, distinct from a personal presence, by which a crime may be consummated." Hyde v. United States, 225 U.S. 347, 362 (1912), superseded on other grounds by Pena-Rodriguez v. Colorado, 137 S. Ct. 855 (2017). Particularly when an offense (like tax evasion) is a continuing offense, Congress can "provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates." United States v. Johnson, 323 U.S. 273, 275 (1944); see 18 U.S.C. § 3237(a) (continuing-offense venue provision). The focus for venue purposes, therefore, is on the conduct not the actor. See Johnson, 323 U.S. at 276 (holding that continuing offenses can be prosecuted in "any criminal court of the United States through which

7

a process of wrongdoing moves"); Spies, 317 U.S. at 499 (defining punishable tax-evasion conduct as any acts "the likely effect of which would be to mislead or to conceal").

The cases upon which Defendant relies support the same conclusion. For example, Han selectively cites United States v. Martino, No. 100-389, 2000 WL 1843233, at *2 (S.D.N.Y. Dec. 14, 2000) ("In tax cases such as this, the government generally must show that the defendant engaged in some affirmative act in this district with a tax evasion motive."). The next paragraph, however, clarifies that such "affirmative acts" include "any district where the tax preparer received false information from the taxpayer." Id. The key in Martino, as in Spies and Johnson, is whether the defendant's act in furtherance of tax evasion "propelled" through the district. Johnson, 323 U.S. at 275; see United States v. McGill, 964 F.2d 222, 230 (3d Cir. 1992) ("An affirmative act is anything done to mislead the government or conceal funds to avoid payment of an admitted and accurate deficiency."); cf. Hyde, 225 U.S. at 356-67 (venue proper in district where co-conspirator carried out overt acts even if defendant never entered the district).

Despite the Supreme Court's seemingly boundless formulation of venue, common sense and notions regarding "the fair administration of criminal justice and public confidence in it," Johnson, 323 U.S. at 276, suggest there must be some limiting principle. Otherwise, "a defendant who devised a scheme to defraud while driving across the country could be prosecuted in virtually any venue through which he passed." United States v. Ramirez, 420 F.3d 134, 145 (2d Cir. 2005); see United States v. Smith, 641 F.3d 1200, 1208 (10th Cir. 2011) (venue for false-statements-to-government-agent offense not proper in Oklahoma simply because statements were about events that occurred in Oklahoma). The Supreme Court has, accordingly, explained that venue is proper in any location where the offense's "essential conduct elements" occurred. Rodriguez-Moreno, 526 U.S. at 280. Lower courts have embodied this guidance in

varying formulations. See United States v. Auernheimer, 748 F.3d 525, 537 (3d Cir. 2014) (venue proper in "location in which a crime's effects are felt"); United States v. Bowens, 224 F.3d 302, 313 (4th Cir. 2000) ("When Congress defines the essential conduct elements of a crime in terms of their particular effects, venue will be proper where those proscribed effects are felt."); United States v. Reed, 773 F.2d 477 (2d Cir. 1985) (venue proper in "sites other than where the [defendant's] acts occurred" if conduct had substantial contact with district); United States v. Williams, 788 F.2d 1213, 1215 (6th Cir. 1986) (adopting Reed substantial-contacts test); United States v. Brimberry, 779 F.2d 1339, 1345 (8th Cir. 1985) (holding that in bankruptcy-fraud case venue proper in district where bankruptcy proceeding is located even if fraudulent acts never occurred there).

The "essential conduct element[]," Bowens, 224 F.3d at 313, of § 7201 is the evasion of a tax deficiency. By allegedly providing false information to Envion employees in D.C., which was then used to construct corporate and individual tax returns, Han committed a "willful attempt to defeat and evade" tax liability. Spies, 317 U.S. at 499. Similarly, the Indictment's allegation that Han caused a fax to be transmitted from D.C., directing the deposit of the $20 million into his personal bank account without counting those funds as income, is "conduct, the likely effect of which would be to mislead or to conceal." Id. It is thus irrelevant that Defendant was not actually present here when the acts he directed occurred. That alleged conduct "bear[s] substantial contacts," United States v. Saavedra, 223 F.3d 85, 93 (2d Cir. 2000) (citation omitted), with D.C., making venue proper here.

Defendant alternatively argues that, even if his communications with Envion bookkeepers suffices as an affirmative act, it is irrelevant to his individual tax liability. The alleged conduct, however, resulted in both false corporate and individual records. As his

employer, Envion was presumably responsible for constructing Han's W-2 information. If he falsely recorded income as business loans, his W-2 — upon which his accountant undoubtedly relied in completing his tax returns — would also be false. The Indictment, therefore, sufficiently alleges conduct in the District with a tax-evasion motive to support venue here.

### C. Multiplicity (Count 12)

The Court next addresses Han's Motion to Dismiss Count 12, charging him with fraud under D.C. law, as duplicative of Counts 1 and 2 for federal wire fraud. See ECF No. 41. An indictment that charges a single offense in several counts offends the Fifth Amendment because it may lead to multiple punishments for a single crime. Duplicative or multiplicitave indictments also run the risk of "some psychological effect upon a jury by suggesting to it that [the] defendant has committed not one but several crimes." United States v. Ketchum, 320 F.2d 3, 8 (2d Cir. 1963) (citation omitted). In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court set out a test to determine when the Government may constitutionally indict a defendant on multiple counts based upon the same conduct. In such cases, "the test . . . to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304. Practically speaking, then, the Court must first enumerate the elements of each offense. So long as each "requires proof of a different element," the two offenses are distinct and raise no constitutional concern. Id.

The federal wire-fraud statute imposes penalties on anyone who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted" some communication by wire "for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. To convict a defendant of wire fraud, then, the Government must

show that he (1) knowingly and willingly (2) entered into a scheme to defraud and (3) used an interstate wire communication to further the fraud. See United States v. Alston-Graves, 435 F.3d 331, 337 (D.C. Cir. 2006).

First-degree fraud under the D.C. Code, conversely, requires the Government to show that a defendant (1) "engage[d] in a scheme or systemic course of conduct [(2)] with the intent to defraud or to obtain property of another [(3)] by means of a false or fraudulent pretense, representation, or promise and thereby [(4)] obtain[ed] property of another or cause[d] another to lose property." D.C. Code § 22-3221(a). Both sides agree that wire fraud contains an element absent from the local statute — namely, the use of interstate wire communications. See Mot. at 4. Han argues, however, that common-law fraud does not possess any elements not included in wire fraud. The Court disagrees.

The federal wire-fraud statute focuses on the defendant's scheme to defraud — the "offense [i]s complete the moment [a defendant] execute[s] a scheme" to defraud. Pasquantino v. United States, 544 U.S. 349, 371 (2005). That is, "[t]he thing which is condemned is (1) the forming of the scheme to defraud, however and in whatever form it may take, and (2) a use of [wire communications] in its furtherance. If that is satisfied, more is not required." United States v. Trapilo, 130 F.3d 547, 551 (2d Cir. 1997) (quoting Gregory v. United States, 253 F.2d 104, 109 (5th Cir. 1958)) (first alteration in original). Unlike common-law fraud, which has as an essential element that the defendant actually "obtain or cause another to lose property," the focus in wire fraud is on the "intent and purpose." Pasquantino, 544 U.S. at 371 (citation omitted). A defendant who "devised . . . [a] scheme" to bilk a victim out of her money using wire communications but never received any property can be guilty of wire fraud but not first-degree fraud. See United States v. Stewart, 872 F.2d 957, 960 (10th. Cir. 1989) (noting that mail

11

fraud, unlike common-law fraud, "does not require the successful completion of the scheme to defraud"); United States v. Philip Morris, Inc., 273 F. Supp. 2d 3, 6 (D.D.C. 2002) (wire fraud and common-law fraud not analogous because wire fraud does not "require proof of . . . completion of the scheme to defraud"); United States v. Trie, 21 F. Supp. 2d 7, 20 (D.D.C. 1998) ("success of a scheme to defraud is irrelevant for the purposes of prosecution of the scheme under . . . wire fraud staute[]"); United States v. Sun-Diamond Growers of Calif., 964 F. Supp. 486, 492 (D.D.C. 1997) (same).

In sum, an essential element of wire fraud not contained in first-degree fraud is the use of interstate communications to further the scheme. First-degree fraud, on the other hand, requires the Government to prove that the defendant actually received another's property, an element not required for wire fraud. Because each statute contains an independent element, the Indictment satisfies the Blockburger test.

D. Securities Fraud (Count 3)

Han last argues that Count 3, securities fraud, must be dismissed because the promissory notes at issue do not qualify as a "security" under the statute. See ECF No. 41. A defendant may move to dismiss a count on the basis that it fails to state an offense. United States v. Cotton, 535 U.S. 625, 631 (2002) (quoting Lamar v. United States, 240 U.S. 60, 65 (1916)); see Fed. R. Crim P. 12(b)(3)(B)(v) & 2014 advisory committee notes. The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged. See United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012); United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).

The Exchange Act prohibits "any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails . . . [t]o use or employ, in connection

with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance" in violation of SEC rules and regulations. See 15 U.S.C. § 78j(b). Han believes that he could not be found guilty of such an offense because any alleged fraud was not "in connection with the purchase or sale of any security." Instead, he maintains that the promissory notes were simply "loans made to Mr. Han from his friends and associates in connection with Mr. Han's business," not "securities" under the Exchange Act. See Mot. at 1. The Government counters that they are in fact securities, but, even if that classification is debatable, Defendant's argument is premature at this stage. The Court agrees with the latter point and thus need not discuss the former.

Whether the promissory notes are securities is a mixed question of law and fact that depends on four factors: 1) "the motivations that would prompt a reasonable seller and buyer to enter into" the arrangement; 2) "the plan of distribution of the instrument"; 3) "the reasonable expectations of the investing public"; and 4) whether "another regulatory scheme significantly reduces the risk of the instrument." Reves v. Ernst & Young, 494 U.S. 56, 66-67 (1990) (internal citations omitted); compare LeBrun v. Kuswa, 24 F. Supp. 2d 641, 648 (E.D. La. 1998) (holding that promissory notes were not securities "[b]ased on the factual circumstances of the matter at issue"), with Leemon v. Burns, 175 F. Supp. 2d 551, 559 (S.D.N.Y. 2001) (finding that promissory notes that could be converted into company stock were securities). Deciding, at this juncture, whether the promissory notes are securities would require the Court to improperly make "a determination of facts that should [be] developed at trial." Engle, 676 F.3d at 415 (internal citation omitted); see United States v. Hill, No. 16-4299, 2017 WL 3575241, at *1-2 (4th Cir. Aug. 18, 2017) (unpublished) (reversing district court's dismissal of as-applied constitutional challenge as "premature" because deciding whether defendant's alleged conduct

satisfies the statutory requirements "may well depend on a consideration of facts" and indictment's allegations were facially valid).

On this point, United States v. Weisscredit Banca Commerciale E D'Investimenti, 325 F. Supp. 1384 (S.D.N.Y. 1971), is instructive. There, the foreign-bank defendant Weisscredit was charged with, among other things, acting as a broker/dealer in violation of the Exchange Act. The bank moved to dismiss the indictment on the basis that the specific regulation at issue was not intended to apply to foreign banks. The court rejected this assertion because whether the defendant "acted as a 'broker' or 'dealer' subject to [the regulation] is an issue of fact for trial." Id. at 1392. Because the indictment had alleged that the bank was acting as a broker/dealer, it was not facially invalid. Id. at 1393.

Similarly, the Indictment here alleges that Han "did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of a security." Indictment, ¶ 48. Because this allegation is plausible on its face and will be the subject of competing proof at trial, the Indictment is valid. See, e.g., United States v. Marbelt, 129 F. Supp. 2d 49, 55-56 (D. Mass. 2000) (rejecting defendant's contention that indictment should be dismissed because transportation of money from Boston to Puerto Rico is not financial transaction within meaning of relevant statute as "mixed question[] of fact and law, properly decided at trial"). "Whether the government can prove the averment" is an issue for trial, not a motion to dismiss. Weisscredit, 325 F. Supp. at 1393; see United States v. Fineman, 434 F. Supp. 189 (E.D. Pa. 1977) (rejecting defendant's argument to dismiss indictment because his conduct did not constitute "enterprise" within meaning of RICO statute as mixed question of law and fact appropriately reserved for trial). Defendant is, of course, free to raise this issue on a

Rule 29 motion at trial, but, at this stage, the Government has met its burden to allege securities fraud.

## IV. Conclusion

For the reasons set forth above, the Court will deny Defendant's Motions in a separate Order to be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 1, 2017