UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

MICHAEL SANG HAN,

Defendant.

Criminal Action No. 15-142 (JEB)

## MEMORANDUM OPINION

Defendant Michael Sang Han seeks compassionate release from his 48-month prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). At 50 years old, he argues that underlying health conditions that render him more susceptible to the coronavirus combined with a need to care for his elderly parents together constitute extraordinary and compelling circumstances warranting early release. The Government opposes, contending both that Han has not met his burden and that the 18 U.S.C. § 3553(a) factors militate in favor of continued detention. Agreeing on both counts, the Court will deny Defendant's Motion.

I.   **Background**

On May 9, 2018, a jury convicted Han on two counts of tax evasion under 26 U.S.C. § 7201. See ECF No. 206 (Mot.) at 1. This Court sentenced him to 48 months in prison on October 17, 2018, and it ordered him to pay more than $4.9 million in restitution. See ECF No. 178 (Judg.) at 2, 7. Including good-time credits, Han has served nearly 70% of his sentence and is scheduled to be released on May 6, 2022. See Mot. at 1.

In July 2020, Han petitioned his facility, FCI Petersburg Low, seeking compassionate release to home confinement. Id. at 8. His petition was denied, as were his appeals. Id. He now moves for compassionate release under 18 U.S.C. § 3582, claiming "extraordinary health risks . .

1

. due to the COVID-19 pandemic" and citing "the continued worsening health of [his] parents, for whom [he] had been the sole caretaker." Id. at 1. Han contends that his health has deteriorated during his incarceration and that his hypertension and borderline obesity "present elevated COVID-19 risks." Id. at 7; ECF No. 209 (Reply) at 7. The Government rejoins that Han's hypertension is relatively common and well managed, and that while he may be on the verge of clinical obesity — his current Body Mass Index (BMI) is 29.7, just below the obesity threshold of 30.0 — his weight does not begin to approach the level of severe obesity that courts have deemed sufficient to warrant compassionate release. See ECF No. 214 (Gov't Sur-Reply Opp.) at 2–3 & n.4. Han also asserts that the Court should consider it an "extraordinary and compelling" factor that he is the sole available caretaker for his elderly parents during a pandemic that has made it more difficult for them to take care of themselves. See Mot at 18. The Government responds that the Court already factored Han's caretaker role into his sentencing, giving him a downward variance, and notes that the need to care for elderly parents is generally not considered extraordinary for the purposes of compassionate release. See ECF No. 208 (Gov't Opp.) at 20–21, 23.

The Court held a hearing on the Motion on January 8, 2021, and then ordered the parties to submit a further Status Report updating the Court on the spread of the virus at Petersburg and the progress of vaccinations there. They have done so. See ECF No. 216 (JSR).

## II.   Legal Standards

Federal courts are generally forbidden from altering a term of imprisonment once it has been imposed, "but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011). One such exception is codified at 18 U.S.C. § 3582(c)(1)(A) and deemed the "compassionate release statute." This section, as modified by the First Step Act

of 2018, Pub. L. No. 115–391, allows courts to alter a sentence upon motion by a defendant once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A).

Once the exhaustion requirement has been met, a defendant must show that "extraordinary and compelling reasons warrant such a reduction" and that the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." Id. The Commission has stated that "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or medical condition" or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(A)(ii). The Commission also acknowledges, however, that there may be "[o]ther [r]easons" presenting extraordinary and compelling circumstances beyond, or in combination with, the reasons described. Id. § 1B1.13 cmt. n.1(D). It is clear that medical risks from the COVID-19 pandemic may constitute one such reason. United States v. Morris, No. 12-154, 2020 U.S. Dist. LEXIS 91040, at *20 (D.D.C. May 24, 2020).

In addition, the statute and the policy statement instruct courts to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); U.S.S.G § 1B1.13. Courts must consider these factors "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence." United States v. Johnson, No. 15-125, 2020 U.S. Dist. LEXIS 86309, at *13 (D.D.C. May 16, 2020).

### III.   Analysis

At the outset, the Court acknowledges that Defendant has cleared the hurdle of exhausting his administrative remedies in accordance with the statute. His July 2020 petition for compassionate release was denied by the Bureau of Prisons, as was his appeal, see Mot. at 8, and the Government does not dispute that he meets the exhaustion requirement. See Gov't Opp. at 11–12. The Court thus considers whether Han has established extraordinary and compelling circumstances warranting his release, and it then looks at the section 3553(a) factors and the Sentencing Commission's policy statement.

### A.   Extraordinary and Compelling Circumstances

Han alleges that his hypertension and borderline obesity make him particularly vulnerable to the coronavirus, a risk he argues is elevated by recent outbreaks at FCI Petersburg Low. While these health factors may somewhat increase Han's coronavirus risk level, they are not sufficiently severe to qualify as extraordinary and compelling circumstances. The Centers for Disease Control and Prevention recognizes that adults with obesity "are at increased risk of severe illness from the virus," while adults with hypertension "might be at an increased risk." Ctrs. for Disease Control & Prevention, People with Certain Medical Conditions (Feb. 3, 2021), https://bit.ly/3jyJoxK (emphasis added). Merely falling within a heightened risk category, however, will not automatically qualify an inmate for compassionate release; the condition must in fact pose a clear threat. Compare United States v. Tidwell, No. 94-353, 2020 U.S. Dist. LEXIS 139434, at *1, 9–14 (E.D. Pa. Aug. 5, 2020) (granting compassionate release to defendant with stage IV metastatic prostate cancer and life expectancy of less than a year), with United States v. Boulas, No. 17-10351, 2020 WL 5096712, at *2–3 (D. Mass. Aug. 28, 2020) (denying compassionate release for defendant with hypertension and other health conditions

4

because they are "common among many Americans . . . [and] do not rise to the level of a debilitating illness or serious medical condition").

The problem with characterizing Han's obesity as an extraordinary medical concern starts with the fact that he is not actually obese. His most recent available weight translates into a BMI of 29.7, which is below 30.0 and thus falls in the CDC's "overweight" range rather than in "obese." See Gov't Sur-Reply at 2-3. As the Government notes, Han would need to gain nearly 80 pounds to be considered severely obese, and courts have regularly denied compassionate release during the COVID-19 pandemic for inmates with far higher BMIs. Id. at 3 (collecting cases denying release for BMIs up to 38.4); see also United States v. Wilfred, No. 07-351, 2020 U.S. Dist. LEXIS 135402, at *10 (E.D. La. July 30, 2020) (explaining that obesity, "even paired with hypertension . . . does not provide adequate grounds for compassionate release"); United States v. Somerville, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (stating that defendant "must at least show . . . a sufficiently serious medical condition . . . placing [him] at a uniquely high risk of grave illness or death if infected by COVID-19," and "an actual, non-speculative risk of exposure").

It may be true that Han's weight has fluctuated above the obesity threshold in the past, and that it may do so again, but the Court cannot consider potential future obesity to be a medical condition warranting early release. According to the CDC, more than 42% of American adults are clinically obese and the average adult male has a BMI of 29.4. See Ctrs. for Disease Control & Prevention, Prevalence of Obesity and Severe Obesity Among Adults: United States, 2017–2018 (Feb. 2020), https://bit.ly/3cTe37L; National Center for Health Statistics, Anthropometric Reference Data for Children and Adults: United States 2015-2018 (Jan. 2021), https://bit.ly/3rCjGv1. While Han's weight may make him somewhat more vulnerable to the

coronavirus, his BMI does not pose a clear threat sufficient to qualify as an extraordinary or compelling circumstance warranting compassionate release.

The analysis is similar for Defendant's hypertension argument. While this condition may make Han moderately more susceptible to serious illness or death from the coronavirus, hypertension is a common medical condition and his case does not seem to be particularly severe. Over 100 million Americans — 45% of all adults — are estimated to have hypertension. See Ctrs. for Disease Control & Prevention, Facts About Hypertension in the United States (Sept. 2020), https://bit.ly/3q7QjQO. Han's medical records indicate that prison doctors have been treating it with a low dose of blood-pressure medication. See ECF No. 206-3 (Mot., Exh. C) (Medical Records) at ECF p. 3. As the court in Boulas noted for an inmate with hypertension, this is a condition "common among many Americans" that is "managed with medication," not the type of "debilitating illness or serious medical condition" contemplated by the sentencing guidelines. See 2020 WL 5096712, at *2. When the Bureau of Prisons denied Han's petition for release last August, it noted that "[a]lthough you have medical issues, they are being well managed at this point and are not causing a life-threatening medical problem." ECF No. 206-4 (Administrative Remedy Request) at 9. As a result, viewed either singly or in concert, Han's health problems do not constitute significant risk factors.

Even if they did, he fails to show that there is a non-speculative likelihood of exposure to the virus at FCI Petersburg Low. As of February 11, 2021, 25 of 595, or 4.2%, of inmates at the facility had active cases of COVID-19. See COVID-19 Coronavirus: COVID-19 Cases, Fed. BOP, https://www.bop.gov/coronavirus/ (last visited Feb. 11, 2021). This number is not trivial, but it does not alone establish that Han is likely to be exposed. In addition, Petersburg has now begun vaccinating staff and prisoners. It received 400 doses in early January, offering 325 to

staff and the rest to inmates, based on priority of need. See ECF No. 216 (Joint Status Rept.) at 2. Han was not in this first round of vaccinations, but the facility anticipates receiving more vaccines to administer to staff and inmates. Id. at 2–3.

Han also contends that his parents' declining health and need for a caretaker during the pandemic constitute grounds for compassionate release. The relevant policy statement only provides for caregiving duties for a defendant's minor children, spouse, or registered partner. See U.S.S.G. § 1B1.13, cmt. n.1(C). There is no provision for adult parents. Even if there were, the declining health of elderly parents, while tragic, is not an extraordinary circumstance warranting release. While the Court is sympathetic to the Hans' family situation and his mother's difficulty caring for his father amidst her own serious health deficits, the Court already considered Han's caretaker role in fashioning his below-Guidelines sentence.

In sum, Defendant's medical conditions and family circumstances in combination with the current virus spread at Petersburg are not sufficiently extraordinary and compelling to warrant his release.

### B.  Section 3553(a) Factors

Even if Han had cleared this high bar, the compassionate-release analysis would not end there. That is because the Court must also consider whether release would be consistent with the factors set forth in 18 U.S.C. § 3553(a) and the Sentencing Commission's policy statements. United States v. Farley, No. 08-118, 2020 WL 4698434, at *2 (D.D.C. Aug. 13, 2020). In considering the applicable statutory sentencing factors — including "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), "the history and characteristics of the defendant," id., and "the need for the sentence imposed . . . to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense," id. § 3553(a)(2)(A) — this Court concludes that they would weigh against release.

First and foremost, the Court finds the nature and circumstances of Han's crimes exceedingly serious. He was convicted for evading taxes on more than $14 million he embezzled from his business to fund a luxury lifestyle, causing a loss to the public fisc of nearly $5 million. See ECF No. 165 (Gov't Sentencing Memo) at 2–3. As the Court stated to Han at sentencing, "You abused that trust [in our tax system] and you abused it so that you could spend money on yourself, and spent a lot of money on yourself, a lot of money that should have gone to the government as your taxes." Gov't Opp. at 4 (quoting Sentencing Transcript at 26:14-27:14).

Additionally, while Han was only convicted on two counts of Tax Evasion, the evidence at trial showed he could easily have faced many more charges and a potentially longer sentence. Han was originally indicted on twelve counts, including Wire Fraud and Securities Fraud, but after a key government witness became unavailable to testify because of deteriorating health, the government dismissed all but the tax-evasion counts. See Gov't Sentencing Memo at 1–2. These dismissed counts aside, the seriousness and scale of Han's misconduct does not weigh in favor of release here.

With respect to his history and characteristics, the Court acknowledges that these factors do tip toward Han. He has no prior convictions, has complied with all Court-ordered conditions, and has maintained good behavior while serving roughly 70% of his 48-month sentence. The Court has sympathy for the plight of his parents and his desire to care for them, as well as for his own health issues. At the end of the day, however, this does not outweigh the seriousness of his offense or the other considerations just discussed. The Court thus concludes that Defendant's sentence is appropriate, and it will not grant his early release.

8

## IV.     Conclusion

As Han has not established extraordinary and compelling circumstances warranting compassionate release, the Court will deny his Motion. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 12, 2021

9